UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| PETE WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:02CV00022 AGF |
| ) | |
| GARY KEMPKER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's motion for reconsideration of this Court's Order dated November 2, 2004, granting Defendants' motion for summary judgment.[1] Plaintiff's motion with respect to his second-hand-smoke claims is based on his assertions that the exposure was more extensive than indicated by the Court, and that the doctor upon whose opinion Defendants relied was no longer licenced. Plaintiff also requests reconsideration of the Court's refusal to exercise jurisdiction over the state claims in Count III of his amended complaint, because there is federal jurisdiction based on diversity.

For the reasons set forth below, Plaintiff's motion shall be denied with respect to his second-hand smoke, and granted with respect to his state claims in Count III against three of the Defendants. The Court had incorrectly declined to exercise jurisdiction over these state claims, as diversity jurisdiction existed. Upon reconsideration, however,

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

summary judgment is granted to the three Defendants on the merits of Plaintiff's state claims in Count III. Summary judgment is also granted to these Defendants on Plaintiff's previously-unaddressed retaliation claim contained in Count III.

Accordingly, the Judgment dated November 2, 2004, shall be vacated. The Memorandum and Order dated November 2, 2004, shall be amended to incorporate the present Memorandum and Order, and a new Judgment shall be issued to accompany this Memorandum and Order.

## BACKGROUND

Plaintiff Pete Wright, who was born in 1962, has been in the custody of the Missouri Department of Corrections (MDOC) since 1989. He was incarcerated at Moberly Correctional Center (MCC) from January 4, 2000 to June 14, 2002. Plaintiff commenced this action on March 12, 2002. An amended complaint, asserting federal and state claims, was filed on June 20, 2003, with the assistance of appointed counsel. In Counts I and II of the amended complaint, Plaintiff sought damages under 42 U.S.C. § 1983 claiming that his Fourteenth and Eighth Amendment rights were violated based on his alleged exposure to second-hand smoke. He asserted that the exposure occurred on several specific occasions, ranging from a few days to three weeks, while at MCC, and from March 2001 to February 2002 while working in the dining facilities of the prison. Named as defendants were seven MDOC employees, sued in their individual and official capacities.

In Count III of the amended complaint, entitled "Libel and Slander/False Imprisonment," Plaintiff alleged that three of the seven Defendants (Correctional Officers

William Summers, Wesley Eliot, and Fred Stephenson) made false and defamatory statements about Plaintiff in connection with disciplinary charges lodged by Summers against Plaintiff, resulting in Plaintiff being placed in disciplinary confinement for approximately two weeks. Plaintiff alleged that these Defendants were motivated by bad feelings towards Plaintiff due to complaints he had brought against them, and that their actions therefore violated Plaintiff's First Amendment rights. Am. Compl. ¶ 66 & 72.

The record establishes that at least by the summer of 1996, Plaintiff was diagnosed with asthma for which he was prescribed an Albuterol inhaler. In granting Defendants summary judgment, the Court focused on the following evidence presented by Plaintiff: From January 7 to January 20, 2000, Plaintiff was placed in disciplinary segregation at MCC with a cell mate who smoked at least 15 cigarettes per day, and on at least three occasions when the cell mate smoked, Plaintiff began wheezing, had difficulty breathing, and got a headache. Plaintiff requested his inhaler, which he would regularly use about three times a day, but was not provided with one until he was released from disciplinary segregation.

From November 30 to December 3, 2001, Plaintiff was housed at MCC in a cell with a smoker who smoked at least five cigarettes a day. The smoke caused Plaintiff to suffer watery eyes, difficulty breathing, tightness in the chest, and a headache. During these four days, Plaintiff requested his inhaler but it was not provided to him. On December 3, 2001, Plaintiff was transferred to another cell pursuant to his request to be housed with a nonsmoker, however, his new cell mate smoked as well. Plaintiff remained in this cell until December 10, 2001, during which time he suffered from the symptoms

noted above on at least two occasions, and again was not given his inhaler despite his requests for it.

Between March 2001 and October 2001, Plaintiff had job duties in the dining hall at MCC. While working there, he was exposed to second-hand smoke because inmates and guards smoked there. In May 2003, Plaintiff was diagnosed with chronic myelogenous leukemia (CML). The MCC physician, Dr. Robert Hampton, and Defendants' medical expert, who based his opinion, at least in part, on Dr. Hampton's records, designated Plaintiff's asthma as "mild," a conclusion with which Plaintiff's expert disagreed.

In granting Defendants summary judgment, the Court applied Helling v. McKinney, 509 U.S. 25 (1993), in which the Supreme Court held that a prisoner's Eighth Amendment claim could be based upon future harm to his health, as well as upon present harm, arising out of exposure to second-hand smoke. To establish such a constitutional violation, a prisoner must prove (1) that he was objectively exposed to "unreasonably high levels" of second-hand smoke, and (2) that prison authorities demonstrated a "deliberate indifference" to his plight. Id. at 33-34.

This Court concluded that Plaintiff failed to meet this standard in that he did not present evidence that the exposure to second-hand smoke on the occasions noted above and while he worked in the dining hall significantly jeopardized his future health or was a contributing cause of his CML. The Court also concluded that the actual discomfort alleged by plaintiff (e.g., wheezing and headaches) did not reach constitutional proportions. As requested by Defendants in their motion for summary judgment, the

Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims. The Court did not address Defendants' alternate argument that Summers, Elliot, and Stephenson were entitled to official immunity with respect to the state claims.

## ARGUMENTS OF THE PARTIES

Plaintiff raises three arguments in his present pro se motion for reconsideration: (1) diversity jurisdiction existed as to his state law claims; (2) it has been discovered that Dr. Hampton did not have a licence to practice medicine in Missouri, and thus his opinion that Plaintiff's asthma was mild and Defendants' experts' opinion based thereon, must be disregarded; and (3) the record before the Court showed that Plaintiff was exposed to second-hand smoke repeatedly for two years while he was in general population at MCC and not just on the occasions noted in his amended complaint and focused upon by the Court. Plaintiff points to the allegations in ¶ 16 of his pro se complaint, allegations which appointed counsel omitted from the amended complaint.

In ¶ 16 of his pro se complaint, Plaintiff had alleged that from January 21, 2000 to the date of his filing this action (March 12, 2002), he had been exposed to "unreasonably high levels" of second-hand smoke at MCC. He alleged that inmates were allowed to smoke inside their cells in all housing units, with each housing wing holding approximately 186 inmates, most of whom smoked approximately five cigarettes a day. He further alleged that he complained of headaches, persistent coughing, and asthma attacks/breathing problems as a result of the daily exposure to second-hand smoke. As evidentiary support for these allegations, Plaintiff refers to his own deposition testimony

dated November 4, 2003, (Def.'s Ex. A to Mot. for Sum. J. at 101) that he filed grievances about the situation in general population throughout the time he was at MCC.

In response to Plaintiff's motion for reconsideration, Defendants argue that the revocation of Dr. Hampton's medical licence is irrelevant to Plaintiff's claims with regard to second-hand smoke exposure, especially as the revocation took place on July 21, 2004, after Dr. Hampton treated Plaintiff and after Defendants filed their motion for summary judgment, and because the reason for the revocation was Dr. Hampton's failure to pay taxes, not a lack of medical abilities. Defendants further argue that even though diversity jurisdiction exists, Plaintiff's state claims fail because Plaintiff did not administratively exhaust these claims as required by Missouri law, Mo. Rev. Stat. § 506.384.

In reply, Plaintiff argues that he did exhaust prison remedies on his state law claims. Plaintiff submits evidence establishing that he exhausted the prison grievance process maintaining that (1) he was innocent of the charges of being out-of-bounds, of making threats, and of creating a disturbance; and (2) that the reason for the three charges having been filed against him and for his having been found guilty of creating a disturbance was to retaliate against him for filing previous grievances. Defendants counter that even if Plaintiff actually exhausted these claims, Count III of his amended complaint is fatally flawed for failure to plead such exhaustion. Defendants also reassert their argument that Summers, Elliot, and Stephenson are entitled to official immunity as to the state claims.

# DISCUSSION

## Eighth Amendment Claims

As the Court stated in its Memorandum and Order of November 2, 2004, the specific incidents in which Plaintiff was celled with a smoker and denied access to his inhaler are troubling. But they were of relatively short duration. There is no objective evidence in the record as to the level of smoke in the dining area or other areas of the prison Petitioner may have frequented during his incarceration at MCC. Similarly, Plaintiff offered no evidence that his leukemia was somehow caused or exacerbated by exposure to second-hand smoke at MCC.

Even considering Plaintiff's allegations in his pro se complaint about cigarette use in the general population and Plaintiff's deposition testimony on the matter, the Court concludes that he failed to meet the Helling test, and that summary judgment was correctly entered on Defendants' behalf on this claim. Davis v. New York, 316 F.3d 93 (2nd Cir. 2002), upon which Plaintiff relies, is distinguishable. In that case, the record on summary judgment established that the plaintiff was housed for several years in an area with open cells and only bars as barriers, where the majority of the inmates were chain smokers, where ventilation was inadequate, and where the plaintiff was prevented from opening the window. Id. at 95-96, 100-01. The Court believes that here, Plaintiff's allegations beyond the specific instances discussed in the Court's Memorandum and Order of November 2, 2004, are significantly different, alleging only general exposure.

In addition to the cases relied upon in this Court's earlier Memorandum and Order, the Court notes two recent cases on the issue which support the Court's decision,

one from the Eighth Circuit and one from the District Court for the District of Columbia: Larson v. Kempker, 405 F.3d 645, 650 (8th Cir. 2005) (summary judgment proper where prisoner did not meet the Helling objective test because he failed to offer scientific tests establishing the levels of second-hand smoke in his cell); and Hinton v. Williams, 2005 WL 486137, at *2-3 (D. D.C. Feb 28, 2005) (unpublished) (summary judgment granted in favor of jail officials on prisoner's Eighth Amendment claim based on exposure to second-hand smoke despite prisoner's repeated requests to be transferred to a non-smoking unit because of his intolerance to cigarette smoke, because plaintiff failed to offer sufficient objective evidence of the degree of his exposure and its effect on him; anecdotal evidence such as testimony by fellow inmates that smoking was occurring at the facility is not the kind of objective evidence needed to establish an Eighth Amendment violation).

The Court reaches this conclusion without reliance upon Defendants' evidence that Plaintiff's asthma at MCC was only "mild." This was a disputed issue when the Court considered Defendants' motion for summary judgment, and had the issue been material, summary judgment would not have been granted. Thus Dr. Hampton's credentials (or lack thereof) are not relevant.

**Retaliation Claims**

Plaintiff's claims in Count III of the amended complaint, though styled as claims for libel, slander, and false imprisonment, may also be read to assert a claim for retaliation under the First Amendment. Although Plaintiff does not seek reconsideration with respect to the retaliation claims contained in Count III, the Court will take this

opportunity to consider the merits of these claims.  The Court first concludes that these claims have been exhausted.  The factual background for Plaintiff's First Amendment retaliation claim is the same as for his state tort claims.  Plaintiff alleged that on November 23, 2001, Summers told Plaintiff that he was out-of-bounds.  Petitioner denied that he was out-of-bounds, at which point Elliott approached.  Plaintiff maintained that Summers was bothering him because he had filed grievances against Summers, and that he would file another grievance if Summers filed a false report that Plaintiff was out-of-bounds.  Summers asked Plaintiff if he was making a threat, Plaintiff protested, and Elliott ordered that handcuffs be put on Plaintiff on the ground that Plaintiff was creating a disturbance.  Summers charged Plaintiff with three conduct violations -- being out-of-bounds, making threats, and creating a disturbance.  Elliot substantiated Summers' version of events, and Stephenson, the disciplinary hearing officer on the charges, found Plaintiff guilty of creating a disturbance, for which Plaintiff was placed in solitary confinement from November 23 to December 1, 2001.  The other two charges were dismissed.  Petitioner alleged that he was innocent of all charges, and that Elliot and Stephenson also acted in retaliation for prior complaints Plaintiff had made against them.  Plaintiff further alleged that Summers, Elliot, and Stephenson defamed his reputation by making the false charges against him and repeating them to other prison officials.

In support of the motion for summary judgment, Defendants submitted declarations by Summers, Elliot, and Stephenson.  Elliot attested that Summers' report of the incident accurately described Plaintiff's conduct.  Stephenson attested that he amended the threats charge to a disturbance charge because he believed that the conduct

9

described more completely supported the later charge and not because he doubted that Summers believed that Petitioner made threats. And Summers testified that at no time did he act to retaliate against Plaintiff. Defs.' Ex. C, E, & L to Mot. for Sum. J. In an interrogatory answer Stephenson stated that he did not find Plaintiff guilty of being out-of-bounds, and that being out-of-bounds was a lesser offense included in the disturbance charge. Defs.' Ex. E.

"Although the filing of a false disciplinary charge is not itself actionable under § 1983, the filing of a disciplinary charge becomes actionable if done in retaliation for the inmate's filing of a grievance." Dixon v. Brown, 38 F.3d 379 (8th Cir. 1994). A defendant may successfully defend a retaliatory-discipline claim by showing "some evidence" that the inmate actually committed a rule violation. Moore v. Plaster, 266 F.3d 928, 932 (8th Cir. 2001); Farver v. Schwartz, 255 F.3d 473, 474 (8th Cir. 2001) (per curiam). Here, the fact that the out-of-bounds and threats charges were dismissed would not, in and of itself, entitle Defendants to summary judgment. See Dixon, 38 F.3d at 379 (inmate need not show separate, independent injury as element of retaliation claim; district court improperly granted summary judgment on ground that disciplinary committee dismissed false disciplinary charge and inmate was not punished).

Nevertheless, the Court concludes that Defendants' evidence on this matter entitles them to summary judgment on Plaintiff's retaliation claim. While a party opposing summary judgment is entitled to a favorable view of the evidentiary record, the party must substantiate his allegations with sufficiently probative evidence to avoid an adverse judgment. Cody v. Weber, 256 F.3d 764, 772 (8th Cir. 2001). Here Plaintiff has not done

so. The Court concludes that Defendants have shown that there was "some evidence" supporting the finding that Plaintiff was guilty of creating a disturbance. See, e.g., Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (prison officer's first-hand account of events was "some evidence" of a rule violation). Although the out-of-bounds and threats charges were dismissed, the Court concludes that, under the circumstances of this case, the finding of guilty on the disturbance charge, a finding supported by some evidence, defeats Plaintiff's retaliation claims. Furthermore, Plaintiff has offered no evidence of retaliatory motive on the parts of Elliot and Stephenson beyond the bald assertions in the amended complaint, and has not refuted Summers' sworn declaration that he (Summers) never acted to retaliate against Plaintiff.

**State Claims for Libel, Slander, and False Imprisonment**

Plaintiff is correct that the Court erred in not recognizing that it had diversity jurisdiction over Plaintiff's state claims of libel, slander, and false imprisonment, and in accepting Defendants' argument not to exercise supplemental jurisdiction over these claims. As above, the Court rejects Defendants' argument that these claims fail because Plaintiff failed to plead that he administratively exhausted them. As Plaintiff points out, Defendants' official immunity argument was rejected by this Court in the context of Defendants' motion to dismiss (Memorandum and Order dated February 11, 2003, Doc. #24). The Court explained that under Missouri law official immunity does not apply to discretionary acts done by state officials in bad faith or with malice, which entails actual intent to cause injury. As Plaintiff alleged retaliatory motives for the allegedly false charges, the Court concluded that dismissal on the basis of official immunity was not

11

warranted. The Court suggested that a grant of official immunity might be proper at a later stage in the litigation, once a factual record had been developed.

Indeed, the case is now at the summary judgment stage, and the record includes the affidavits of Summers, Elliot, and Stephenson. As noted above, Plaintiff has offered no evidence of retaliatory motive on the parts of Elliot and Stephenson beyond the bald assertions in the amended complaint, and has not refuted Summers' sworn declaration that he, Summers, never acted to retaliate against Plaintiff. Upon review of the now-developed record, the Court concludes that these three Defendants are entitled to summary judgment on the basis of official immunity with respect to Plaintiff's state law claims, for the same reasons as set forth above. See Davis v. Board of Educ. of City of St. Louis, 963 S.W.2d 679, 690 (Mo. Ct. App. 1998) (summary judgment on official immunity grounds was properly granted to state official where plaintiff failed to set forth specific facts showing a genuine dispute for trial on the issue of defendant's malice or bad faith).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for reconsideration is **DENIED** in part and **GRANTED** in part. The motion is granted with respect to Plaintiff's state claims and retaliation claims against Defendants Summers, Elliot, and Stephenson, and denied in all other respects. [Doc. #84]

**IT IS FURTHER ORDERED** that the Court's Memorandum and Order dated November 2, 2004, is amended to incorporate this Memorandum and Order with respect to Count III of Plaintiff's amended complaint.

**IT IS FURTHER ORDERED** that Defendants, or persons acting on their behalf, shall deliver to Plaintiff all his legal files related to this case. Appointed counsel may request reimbursement in accordance with Local Rule 83-12.06.

**IT IS FURTHER ORDERED** that all other pending motions are denied as moot.

**IT IS FURTHER ORDERED** that, in light of the procedural posture of this case, the final Judgment issued on November 2, 2004, (Doc. #83) is **VACATED,** and a new separate final Judgment shall be issued to accompany this Memorandum and Order. Plaintiff is advised that if he wishes to pursue his appeal, he must file an amended Notice of Appeal, for which no new filing fee is required. See Federal Rule of Appellate Procedure 4(a)(4)(B).

Dated this 12th day of July, 2005.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE